Local 810, American Federation of State, County and Municipal Employees, AFL-CIO, Appellant v. Commonwealth of Pennsylvania ex rel. Edward J. Bradley (President Judge acting individually and on behalf of all Judges of Common Pleas of Philadelphia County), Appellee.

Argued June 5, 1984, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR., CRAIG, MACPHAIL, DOYLE and PALLADINO.

*Jonathan Walters*, with him, *Alaine S. Williams, Kirschner, Walters, Willig, Weinberg & Dempsey,* for appellant.

*Warren M. Laddon,* for appellee.

OPINION BY JUDGE CRAIG, August 6, 1984:

The American Federation of State, County and Municipal Employees, as the union representing certain court-appointed employees of the Common Pleas Court of Philadelphia County, has appealed from the action of a judge (assigned specially to that common

pleas court) whose order invalidated certain provisions of an interest arbitration award, to the extent that those award provisions were challenged by the common pleas court as employer.

Following an impasse in the 1981 negotiations by the union with the City of Philadelphia and the common pleas court, the parties had pursued the interest arbitration proceedings under section 805 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.805.

*American Federation of State, County and Municipal Employees v. Pennsylvania Labor Relations Board*, 83 Pa. Commonwealth Ct. 591, 477 A.2d 930 (1984) has recently summarized the governing legal doctrines which give rise to this recurring issue in cases involving court employees. Although court employees are entitled to collective bargaining rights under PERA, with the officials of the local revenue-raising body (in Philadelphia, the city) functioning as managerial representatives for the courts, that collective bargaining process cannot encroach upon judicial authority to select, discharge and supervise court personnel. *Ellenbogen v. County of Allegheny*, 479 Pa. 429, 438, 388 A.2d 730, 735 (1978); *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board*, 479 Pa. 440, 388 A.2d 736 (1978); *Eshelman v. Commissioners of the County of Berks*, 62 Pa. Commonwealth Ct. 310, 314, 436 A.2d 710, 712 (1981), *aff'd* 502 Pa. 430, 466 A.2d 1029 (1983).

Although the various arbitration award provisions challenged by the common pleas court upon appeal from the arbitrators included the creation of a labor-management committee, promotion and eligibility provisions, vacation and administrative leave matters and the creation of a task force relating to pay plans —all of which were invalidated by the trial judge as

contravening the exclusive supervisory powers of the judicial employer—the union here seeks to preserve upon appeal only the last-mentioned award item, paragraph 6(2), the entirety of which reads:

2. That because of the alleged and apparent inequities between the current pay plan of the Courts and the City of Philadelphia's Executive Pay Plan, that the parties hereto shall set up a task force consisting of representatives from the City and the Union to facilitate the implementation and transition from the current plan to the Executive Pay Plan. Because of the difficulty in working out such transition and conversion it is strongly suggested that an outside consultant be utilized to assist and aid the parties in their task. That a firm time schedule such as February 1, 1982 be established as an objective *for a final report and recommendations.* (Emphasis added.)

Hence, the precise issue is whether an arbitrator's award would encroach upon the exclusive power of the common pleas court to select, discharge and supervise court personnel where the award calls for "a final report and recommendations" by a "task force" of city and union representatives, "to facilitate the implementation and transition" from the "current pay plan of the Courts" to the "City of Philadelphia's Executive Pay Plan."

The plain words of the award itself make it quite clear that the result of carrying out the disputed award would be the conduct of a study, with the sole end product consisting of "a final report and recommendations." The award terms do not call for a new pay plan to be placed into effect. They call merely for a "task force" composed of city and union representatives to "facilitate" implementation and transition from the court's current plan to the city's

plan, as a target. The plan is not to be implemented; there is only to be a facilitating study, with the suggestion that the assistance of a consultant be obtained. Hence no harm—indeed, no impact—upon the operation of the court can ensue if consistency of pay levels between court employees and other city-paid employees is studied and a final report and recommendations submitted.

Perhaps the trial judge and this court might have gained a fuller picture of the subject matter of the ultimate report as to pay plan recommendations if we could have examined the current Court Pay Plan and also the City of Philadelphia's Executive Pay Plan, in order to learn if the effectuation of the transition from one to the other would involve only the redetermination of the dollar compensation levels to be provided through the city government, or could also involve supervisory elements such as job duty reclassification, held to fall within the exclusive judicial function in *Eshelman*. However, an exhaustive search of the reproduced record and the original record, as presented to the trial court and this court, discloses that the current Court Pay Plan and the City Executive Pay Plan, as such, were never made part of the record in any form. Indications from counsel were that the actual pay plans possibly were not formally laid even before the arbitrators (perhaps because the individual arbitrators may have had some local familiarity with those documents), but the record before the trial court and this court does not establish one way or the other whether or not the arbitrators reviewed the pay plans themselves in detail.

The union brief sought to draw attention to certain exhibits from which some aspect of the content of the pay plans could be deduced—a transmittal letter from the court, the city's manual for determining pay scales, calculations by an expert witness of

the effect of pay plan conversion upon the dollar compensation of probation officer positions, and city exhibits indicating the additional dollars cost of certain salary changes—but such fragmentary indications have not provided any comprehensive substitute for the plans themselves.

The transmittal letter tells us very little about what it purported to transmit. The city's manual for determining pay scales appears to deal totally with how to arrive at the dollar compensation for a job; although it thus suggests that only compensation is involved, it does not describe in any detail the city pay plan to be studied under the award in question. Similarly, the exhibits from the union and city experts appear to relate only to matters within the province of the revenue-raising government in the bargaining arena, but they tell us nothing more about the pay plans.

Counsel for the court as employer argued on the basis of what pay plans in general customarily contain, but was unable to point to any record documents to support the basis upon which the court, as employer, took its appeal on this point, along with the others, from the arbitrators' decision. His brief merely refers to an industrial engineering handbook and a professorial text (neither one in the record) to argue what *should* or *could* be in a "pay plan."

The absence of the pay plans themselves from the record as evidence thus required the specially-appointed trial judge to resort similarly to assumption in concluding if the pay plan matter touched chiefly upon the dollar concerns of the revenue raising-government, or also involved important aspects of judicial independence in effecting the court's mission. The trial judge stated:

At first blush it would appear that a "pay plan" is merely that, and thus has to do with

wages and financial matters which are arbitrable. However, one must recognize that any construction of a pay plan or alteration of any existing Court approved pay plan involves more than a simple determination of wage rates. Necessarily, such matters involve re-classification of employees, definition of duties, and the like, matters which clearly fall within the constitutional power of the Judges to supervise. Such matters cannot be made the province of others. *See Eshelman, supra.*

The evidence in this record does not support—nor negate—the trial judge's assumption that pay plans necessarily involve reclassification of employees, or definition of duties and the like.

Therefore, this court cannot affirm the trial judge's invalidation of the pay plan matter on the basis of any assumptions adopted by him, even though those assumptions might have been reasonable, and may well have been adopted because of the vacuum which he faced in a key aspect of the record.

Contrary to the way in which the brief for the employer court would counter-state the issue, the award does not direct the city "to implement a transition" from a "job classification and pay scale plan" of the court to one of the city. It mandates only a study and the production of mere recommendations with respect to achieving consistency as to pay plan among employees all on the same payroll. A study and recommendations may enlighten the exercise of judicial authority; it cannot threaten judicial independence.

Hence, the decision of the trial court, although otherwise to be affirmed, will be reversed to the extent that it invalidates paragraph 6(2) of the award, calling for a task force study to produce a pay plan report and recommendations.

ORDER

Now, August 6, 1984, the order of the Court of Common Pleas of Philadelphia County, dated January 10, 1983, is reversed to the extent that it vacates paragraph 6(2) of the Award of the Arbitration Panel dated July 15, 1981, and is otherwise affirmed.