In the Matter of the Appointment of Thomas P. Antolik. County of Erie, Judith M. Lynch, Richard J. Adams and James J. Goodrich, Appellants.

Argued October 9, 1985, before President Judge CRUMLISH, JR. and Judges ROGERS, CRAIG, MACPHAIL, DOYLE, COLINS and PALLADINO.

*Kenneth D. Chestek,* Solicitor, for appellant, County of Erie.

*Henry T. Reath,* with him, *Dwight Reginald Whitt,* *Duane, Morris & Heckscher,* for appellees, JAMES B. DWYER, President Judge, and Judges of the Court of Common Pleas of Erie County.

*Alexander Unkovic,* with him, *James R. Mall,* *Meyer, Unkovic & Scott,* for Amicus Curiae, Pennsylvania Conference of State Trial Judges.

*Robert L. Knupp, Graf, Knupp & Andrews, P. C.,* for Amicus Curiae, Pennsylvania Association of County Commissioners.

OPINION BY JUDGE COLINS, November 29, 1985:

Judith M. Lynch, Richard J. Adams and James J. Goodrich (appellants), who are respectively the County Executive, Director of Personnel and Director of Finance of Erie County,[1] appeal from an October 4, 1984 order of the Court of Common Pleas of Erie County appointing Thomas P. Antolik (Antolik) Chief Juvenile Probation Officer of the Court of Common Pleas of the Sixth Judicial District. Appellants contend the elevation of Antolik from mere Juvenile Probation Officer to Chief Juvenile Probation Officer violates an applicable anti-nepotism provision ("nepotism rule") of the Personnel Code of Erie County.[2] JAMES B. DWYER, President Judge of the Court of Common Pleas of the Sixth Judicial District of Pennsylvania (P.J. DWYER) and the other Judges of that Court (appellees), who individually and as a group possess the power of appointing Juvenile Probation officers, oppose this view, contending that the inherent constitutional power of the judiciary to hire, fire and

---

[1] Erie County, also an appellant party, is governed under the provisions of the Home Rule Charter and Optional Plans Law, Act of April 13, 1972, P.L. 186, *as amended,* 53 P.S. §§1-101-1-1309.

[2] Section 10(G) of the Erie County Personnel Code.

supervise court personnel makes certain provisions of the County Personnel Code inapplicable to their decision to elevate Antolik.

Antolik has been employed since late 1974 as a Juvenile Probation Officer in Erie County. In 1979, the County Council of Erie County adopted a Personnel Code purportedly applicable to all employee hiring, firing and supervision in Erie County. This Code was amended in the spring of 1982, to state that "one member of an immediate family may not supervise any other member of the same family." "Immediate family" is broadly defined, and includes brothers. In early 1983, the County Council adopted an Administrative Code which also regulates hiring, firing and supervision of Erie County personnel. Appellee Judges did not participate in the formulation or adoption of either Code.

The nepotism issue surfaced when Andrew Antolik (A. Antolik), Antolik's brother, was hired as a Juvenile Probation Officer on June 18, 1984. His personnel change and payroll authorization card was noted as follows: "per nepotism policy, cannot be supervised by (brother) Thomas Antolik [sic]—his supervisor will be Edward Darnell." Although Mr. Darnell was A. Antolik's immediate supervisor, Darnell in turn reports to the Chief Juvenile Probation Officer. The latter position was, on October 3, 1984, assigned to Thomas Antolik by Judge FRED ANTHONY (J. ANTHONY); thus presenting a direct conflict with the nepotism rule of the County Personnel Code.

Immediately thereafter, appellant Richard J. Adams, in his capacity as Director of Personnel of Erie County, notified appellee P.J. DWYER by letter that he would not reclassify Antolik because the appointment violated the nepotism rule and certain provisions of the Administrative Code. Appellees P.J. DWYER and J. ANTHONY issued an order appointing

Antolik to his post and a letter stating that neither the Personnel nor the Administrative Codes were applicable on constitutional grounds to an appointment made by any member of the judiciary. A formal opinion and order denying reconsideration by P.J. DWYER and J. ANTHONY to similar effect soon followed, after which this appeal was taken.

Since October 29, 1984, Antolik has been designated "Acting Director of Juvenile Probation" at a full step lower than the salary rate requested by appellees. On appeal, only the viability of the nepotism rule is argued by appellants. The inapplicability of the provisions of the Administrative Code to Antolik's appointment has been conceded and is not before us on appeal.

Because the nepotism rule affects the power of the judiciary to hire, fire and supervise court-appointed personnel, it must be held constitutionally inapplicable to such personnel as are court-appointed. The opinion by the trial court will be affirmed and Antolik reinstated in his proper position and at his proper salary.

Appellants argue that cases decided by this Court and our Supreme Court in recent years have carved out certain doctrines of limitation relating to the scope of inherent power possessed by the judiciary to do all such things as are reasonably necessary for the administration of justice. *See Sweet v. Pennsylvania Labor Relations Board,* 457 Pa. 456, 322 A.2d 362 (1974) ("Sweet I"). Sweet I and its progeny require a showing of actual impairment of the operations of the judiciary before there can be an intrusion of the judiciary into the actual budgetary process of a legislature or other similar body. *See Lehigh County v. Pennsylvania Labor Relations Board,* 507 Pa. 270, 278, 489 A.2d 1325, 1329 (1985); *Beckert v.*

*Warren,* 497 Pa. 137, 439 A.2d 638 (1981). *See also Commonwealth ex rel. Carroll v. Tate,* 442 Pa. 45, 274 A.2d 193, *cert. denied,* 402 U.S. 974 (1971); *Leahey v. Farrell,* 362 Pa. 52, 66 A.2d 577 (1949).

Furthermore, collective bargaining on behalf of the judiciary by county or executive personnel pursuant to the Public Employee Relations Act ("PERA")[3] has been upheld as constitutional so long as no "genuine threat" was posed to the administration of justice. *See Ellenbogen v. County of Allegheny,* 479 Pa. 429, 438, 388 A.2d 730, 735 (1978) ("Ellenbogen"); *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board,* 479 Pa. 440, 388 A.2d 736 (1978).

Appellants argue that the limiting tests of "actual impairment" and "genuine threat," found in the contexts of collective bargaining and mandamus actions compelling judicial funding, should be applied here so as to permit the county legislative body to impose certain hiring restrictions upon the judiciary. Appellants further argue, dehors the record, that this Court should take judicial notice of the beneficial quality of a rule prohibiting nepotism without providing scientific or other evidence which tends to support such a conclusion. Of course, the appellants' mere factual pronouncements cannot be accepted by this Court pursuant to the doctrine of judicial notice.[4]

No such limiting test is warranted or applicable where the hiring, firing and supervision of court-appointed personnel is concerned, and any law which encroaches upon or affects this power must be struck down unless there exists independent constitutional

[3] Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§1101.101-1101.2301.

[4] The United States Supreme Court has held that there is nothing unconstitutional or *per se* improper about nepotistic hiring practices. *See Kotch v. Board of River Port Pilot Commissioners,* 330 U.S. 552 (1947).

authorization. *Eshelman v. Commissioners of Berks County*, 62 Pa. Commonwealth Ct. 310, 436 A.2d 710 (1981), *aff'd per curiam*, 502 Pa. 430, 466 A.2d 1029 (1983) ("Eshelman"); *Beckert v. American Federation of State, County and Municipal Employees*, 56 Pa. Commonwealth Ct. 572, 425 A.2d 859 (1981), *aff'd per curiam*, 501 Pa. 70, 459 A.2d 756 (1983); *Sweet v. Pennsylvania Labor Relations Board*, 479 Pa. 449, 388 A.2d 740 (1978) ("Sweet II"); *American Federation of State, County and Municipal Employees v. Pennsylvania Labor Relations Board*, 83 Pa. Commonwealth Ct. 591, 477 A.2d 930 (1984) ("A.F.S. C.M.E. v. P.L.R.B."); *County of Allegheny v. Allegheny County Association of Professional Employees*, 67 Pa. Commonwealth Ct. 277, 446 A.2d 1370 (1982) ("Allegheny County Association"). *See also Perri v. Aytch*, 724 F.2d 362 (3d Cir. 1983).

The collective bargaining and judicial funding cases cited by appellants prove the very point they seek to refute, namely that no limiting test is applicable in the court personnel area where hiring, firing and supervision are directly at issue. *Ellenbogen* specifically restricted the scope of collective bargaining to exclude matters pertaining to the hiring, firing and supervision of court employees. *Id.* at 437, 388 A.2d at 734. In *A.F.S.C.M.E v. P.L.R.B.*, this Court in upholding the refusal of Allegheny County to bargain over such matters held that the collective bargaining process cannot encroach upon the judicial authority to select, discharge and supervise court personnel. *Id.* at 595, 477 A.2d at 931-32. *See Allegheny County Association*, 67 Pa. Commonwealth Ct. at 280-81, 446 A.2d at 1372; *Local 810, American Federation of State, County and Municipal Employees v. Commonwealth ex rel. Bradley*, 84 Pa. Commonwealth Ct. 368, 370, 479 A.2d 64, 66 (1984).

264.

The principle adopted in the *Ellenbogen* and the various *A.F.S.C.M.E.* cases is stated in the County Code;[5] "The exercise of such [collective bargaining] responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employees as may be vested in the judges or other county officers." Section 1620 of the County Code, 16 P.S. §1620. With respect to Erie County, which is governed by home rule charter, and not by the County Code, Section 302(b) of the Home Rule Charter and Optional Plans Law,[6] 53 P.S. §1-302(b), provides in pertinent part that "no municipality shall . . . (ii) exercise powers contrary to, or in limitation or enlargement of powers granted by acts of the General Assembly which are applicable in every part of the Commonwealth." This plainly implies that a home-rule county is to be afforded no greater latitude than a non-home rule county where the judiciary is concerned. Our Supreme Court has moreover extended the operation of Section 1620 into every judicial district. *See Ellenbogen*, 479 Pa. at 436, 388 A.2d at 734-35.

The *Eshelman* case cites the test applicable to laws affecting hiring, firing and supervisory power over court employees:

> The courts of this Commonwealth under our Constitution have certain inherent rights and powers to do all such things as are reasonably necessary for the administration of justice. . . . Because the power to select judicial assistants is an inherent corollary of the judicial power itself, the power to supervise or discharge such

---

[5] Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. §§101-2902.

[6] *See* note 1.

personnel flows essentially from the same source. . . . That power may not . . . be policed, encroached upon or diminished by another branch of government.

62 Pa. Commonwealth Ct. at 413-15, 436 A.2d at 712 (citations omitted). As in *Eshelman,* where a collective bargaining effort attempted to encompass the hiring, firing and supervision of court personnel, the anti-nepotism provision of the Erie County Personnel Code would "operate to take from the judges decisions which go to the essence of the judges' constitutional power over the hiring, supervision and discharge of court-appointed employees." *Id.* at 315, 436 A.2d at 713.

Appellants cannot rely on *Reznor v. Hogue,* 63 Pa. Commonwealth Ct. 600, 438 A.2d 1013 (1982), because *Reznor* involved specific facts unique to that case which this Court determined as a matter of law did not encroach on the hiring, firing and supervision powers of the judiciary. Here, no such question is presented. An encroachment is self-evident in that the Personnel Code has as its main subject the regulation of hiring, firing and supervision, and appellants do not seriously dispute that the nepotism rule regulates the hiring, firing and supervision of court employees. Their argument is essentially that the Code encroaches upon this power, and cases like *Reznor* permit the Code to do so. We disagree. That is not the correct reading of *Reznor.*

Nor can appellants rely on the character of their nepotism rule as somehow furthering the public interest in ethical conduct. Laws purporting to subject the judiciary to regulation by the Legislature or the Executive, not founded upon independent constitutional authorization, have been regularly struck down by our Supreme Court as violative of the separation of

powers principle. *See Kremer v. State Ethics Commission,* 503 Pa. 358, 469 A.2d 593 (1983); *Wajert v. State Ethics Commission,* 491 Pa. 255, 420 A.2d 439 (1980).

Because the nepotism rule of Erie County is one encroaching upon the right of the judiciary to hire, fire, and supervise court employees, the nepotism rule of the Erie County Personnel Code must be struck insofar as Thomas P. Antolik and others similarly situated are concerned.

### ORDER

AND Now, this 29th day of November, 1985, the order of the Court of Common Pleas of Erie County, Court Order No. 109 of 1984, filed October 4, 1984, is hereby affirmed.