506 A.2d 479

John W. Gardner, C. Richard Logan, William C. Stouffer, Commissioners of the County of Blair, Pennsylvania, and Robert A. Grove, Controller of the County of Blair, Pennsylvania, Petitioners *v.* Thomas G. Peoples, Jr., President Judge of the Court of Common Pleas of Blair County, Pennsylvania, individually and on behalf of the Judges of the Court of Common Pleas of Blair County, Pennsylvania, and Alfred E. Wegemer, Sheriff of Blair County, Pennsylvania, Respondents.

Argued October 9, 1985, before President Judge CRUMLISH, JR. and Judges ROGERS, CRAIG, MACPHAIL, DOYLE, COLINS and PALLADINO.

*Michael J. Wagner*, with him, *James S. Routch, Evey, Routch, Black, Dorezas, Magee & Andrews*, for petitioners.

*D. Brook Smith*, with him, *Stephen D. Wicks*, for respondents.

OPINION BY JUDGE CRAIG, March 17, 1986:

*Issue*

This case presents an important and sensitive question: When a county commissioners' resolution mandates the retirement of all county employees at age 70, may it lawfully apply to court criers and court attendants on the personal staff of the judges of a common pleas court, or would its application to them violate the constitutional and statutory rules which prohibit interference with the exclusive powers vested in the judges to hire, supervise and discharge such employees?

*History of the Case*

The Pennsylvania Supreme Court assigned this case to this court by an order granting an application for plenary jurisdiction and relief, which the County Commissioners and County Controller of Blair County had filed against President Judge THOMAS PEOPLES of the Court of Common Pleas of Blair County, in his official capacity, and against Alfred E. Wegemer, Sheriff of Blair County. The plenary jurisdiction application embraced two earlier suits, filed separately by the president judge and the sheriff to bar the county from applying its mandatory retirement rule. (Because no counsel for the sheriff has participated in these proceedings in any way, this court agrees with counsel for the county and the president judge that the issues in the sheriff's suit are not before this court in this proceeding, a conclusion confirmed by the fact that the Supreme Court order, although mentioning the sheriff in the caption, reflects the trial court docket number only for the president judge's suit and not that of the sheriff's suit.)

Before the Supreme Court took plenary jurisdiction, that court had specially designated Judge NEWTON C. TAYLOR to preside over the suit filed by the president

judge; Judge TAYLOR had orally granted a temporary restraining order against the county before the filing of its application for plenary jurisdiction to obtain relief from that restraint. Although the application for plenary jurisdiction apparently suspended the trial court's power to deal further with the case, *see* 42 Pa. C. S. §726 and Pa. R.A.P. 3309(d), counsel for all parties have agreed that, in place of a new hearing before this court, we can decide the case on the basis of the record which the parties made before Judge TAYLOR.

### *Facts*

Pursuant to consideration of that record, this court notes that the essential facts are not in dispute and therefore adopts findings substantially in accordance with the findings ultimately filed by Judge TAYLOR. The findings are as follows:

1. The parties consist of the President Judge of the Court of Common Pleas of Blair County, on the one hand, and the elected County Commissioners and elected Controller of Blair County, on the other hand.

2. The president judge, as such, had appointed Walter L. O'Donnell as court crier on his personal staff effective January 7, 1980, and had also appointed Elizabeth L. Dick and Frances M. Riley as part-time court attendants.

3. The Salary Board of the County of Blair previously had lawfully funded those positions.

4. The county commissioners unanimously adopted a resolution of January 12, 1982, mandating retirement from employment with the County of Blair for all county employees who achieved the age of 70 years.

5. In April of 1982, the president judge advised the county commissioners in writing that he regarded the resolution as inapplicable to the employees in question for the reason that the employment and discharge

of court employees are matters within the exclusive control of the judges of the court.

6. At the same time, the Controller of Blair County advised the president judge that he regarded himself as bound by the mandatory retirement resolution and would therefore refuse to continue on the county payroll any employee of the court who had attained the age of 70 years by April 16, 1982.

7. All three of the named court employees had achieved the age of 70 years by the pertinent date.

8. There is no evidence that the performance of their work by the three named court employees is affected in any way by their age.

### Constitutional and Statutory Principles

Our starting point is the constitutional doctrine of separation of powers:

> The Constitution of Pennsylvania establishes three separate, equal, and independent branches of government: the legislature; the executive; and the judiciary. Each branch of our state government is clothed with certain exclusive rights and powers. The courts of this Commonwealth under our Constitution have certain inherent rights and powers to do all such things as are reasonably necessary for the administration of justice. . . . The power to appoint necessary attendants upon the court is inherent in the court to enable it to perform properly the duties delegated to it by the Constitution, and it cannot be doubted that judicial power includes the authority to select persons whose services may be required in judicial proceedings or who may be required to act as the assistants of the judges in the performance of their judicial functions. . . . Because the power to select judicial assistants is an inherent corollary of the judicial power itself,

the power to supervise or discharge such personnel flows essentially from the same source.... That power may not, consistent with the constitutional doctrine of separation of powers, be policed, encroached upon, or diminished by another branch of government.

*Eshelman v. Commissioners of the County of Berks,* 62 Pa. Commonwealth Ct. 310, 314-315, 436 A.2d 710, 712 (1981) (citations omitted), *affirmed per curiam, Eshelman v. American Federation of State, County and Municipal Employees, District Council 88,* 502 Pa. 430, 466 A.2d 1029 (1983).

In *Eshelman* this court held—and the Supreme Court agreed—that an arbitrator's award pertaining to court appointed employees—which included "provisions seeking to govern the discharge, demotion, suspension, and discipline of employees; employee rest periods; employee leaves of absence; employee seniority; and employee classification"—unconstitutionally impinged upon the independence of the judiciary. 62 Pa. Commonwealth Ct. at 313, 436 A.2d at 712.

Although *Eshelman* confirms that the power to hire, supervise, and fire court personnel lies exclusively with the courts, certain matters attendant to judicial branch employment nevertheless fall within the province of county government. In *Reznor v. Hogue,* 63 Pa. Commonwealth Ct. 600, 438 A.2d 1013 (1982), this court held that a county has the right to set rules and regulations concerning documentation of the work hours of court employees. In *Reznor,* this court noted that such regulations "function as a system of checks and balances" and "do not interfere with the power of the judiciary to supervise court personnel." 63 Pa. Commonwealth Ct. at 603, 438 A.2d at 1015.

In *Sweet v. Pennsylvania Labor Relations Board,* 479 Pa. 449, 388 A.2d 740 (1978), the Supreme Court

held that county commissioners had exclusive responsibility for representing judges in collective bargaining agreements involving employees supervised by judges and that the statute authorizing such representation did not impinge upon the independence of the judiciary. *See also Ellenbogen v. County of Allegheny,* 479 Pa. 429, 388 A.2d 730 (1978); *Board of Judges, Court of Common Pleas of Bucks County, Seventh Judicial District v. Bucks County Commissioners,* 479 Pa. 455, 388 A.2d 743 (1978); *Board of Judges, Court of Common Pleas of Bucks County, Seventh Judicial District v. Bucks County Commissioners,* 479 Pa. 457, 388 A.2d 744 (1978).

Statutory confirmation of the constitutional principles appears in section 1620 of the County Code, Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. §1620, which confers upon the county salary board the power to fix the compensation of all employees paid from the county treasury, and upon the county commissioners the sole responsibility to represent the judges of the court of common pleas in collective bargaining negotiations involving such employees, but which definitively adds:

> The exercise of such responsibilities by the county commissioners shall *in no way* affect the hiring, discharging and supervising rights and obligations with respect to such employees as may be vested in the judges or other county officers. (Emphasis supplied.)

In *Lehigh County v. Pennsylvania Labor Relations Board,* 507 Pa. 270, 489 A.2d 1325 (1985), the Pennsylvania Supreme Court affirmed the constitutionally-based force of that statutory statement, holding that judicial secretaries functioned in the judicial process as confidential employees, and therefore could not appropriately be certified within the bargaining unit for the

purpose of the county officers' collective bargaining responsibility.

## Analysis

The pivotal point of the issue here is whether the compulsory retirement mandate, applied across the board to county employees without reference to the identity or job title of any particular employee, nevertheless terminates the employment of a member of a judge's personal staff with such effect that it actually displaces the judiciary's inherent constitutional power to make the decision as to retaining or terminating—that is, hiring or discharging—such employee.

The statement of that determinative query points inexorably to its answer: When the county mandate removes an employee from his or her job, whatever the policy reason may be, the judicial branch has necessarily lost the services of that employee, just as surely and completely as if a county officer had arbitrarily reached over—or overreached—to dismiss the individual from the judicial domain. Judge TAYLOR, in his opinion filed in the underlying case, correctly analyzed these very facts by stating:

> Although the position of tipstaff or court crier might seem less important than that of other court staff positions to the smooth functioning of the court, President Judge Peoples, in his testimony, eloquently pointed out the exceptional skill and competence of the persons involved in this case and their importance to the court and the administration of justice.
>
> The Court has the right to have the persons of its choice on its staff. The talent, competency, work habits, experience and personalities of these court employees have a major impact on the court and on its ability to do its job in a proper and efficient manner. The time needed

to select and train new employees is an additional burden on the court.

The imposition of the mandatory retirement age on court employees means that these three people cannot work, although the court says that their work is outstanding and in no way affected by their age. It also means that the court cannot hire anyone in the future regardless of its needs or the talent of the person involved, if that person is over 70 years old. It also means that the court cannot have the employees that it wants holding those positions.

We hold that for another agency of government to impose a mandatory retirement age upon court employees is to give that agency of government the right to have influence over the hiring and firing of court employees. This is not . constitutionally permissible.

In *Beckert v. Warren,* 497 Pa. 137, 439 A.2d 638 (1981), the Supreme Court expressly approved this court's

conclusion of law that county officers cannot terminate court employees by budget actions *or otherwise.* . . . (Emphasis supplied.)

Thus, the point remains clear that termination of a judicial employee by external authority constitutes an interference with judicial independence without regard to whether the mechanism is an individual dismissal, a fiscal program or a personnel policy of some kind.

Even though no *individual assessment* of any judicial employee by the county commissioners is involved in applying the blanket age rule here, the effect of that rule is to deprive the president judge of his constitutional power to make *his individual assessments* concerning his branch's employees.

In *The Matter of Antolik,* 93 Pa. Commonwealth Ct. 258, 501 A.2d 697 (1985), this court held that one kind

of personnel policy, an anti-nepotism rule, could not be applied to control the identity of those who worked or did not work for the judicial branch. This court held that a county regulation, that "one member of an immediate family may not supervise any other member of the same family," could not apply to bar the judicial branch's selection and hiring of a juvenile probation officer. This court concluded:

> Because the nepotism rule affects the power of the judiciary to hire, fire and supervise court-appointed personnel, it must be held constitutionally inapplicable to such personnel as are court-appointed.

93 Pa. Commonwealth Ct. at 261, 501 A.2d at 699. Notably, the across-the-board anti-nepotism rule involved no individual assessment of any judicial employee or applicant by the county officials.

In *Antolik,* the county officers argued, as here, that a genuine and immediate threat to the administration of justice is required in order to negate the application of the external policy. This court answered by stating:

> Appellants argue that the limiting tests of 'actual impairment' and 'genuine threat' found in the context of collective bargaining and mandamus actions compelling judicial funding, should be applied here so as to permit the county legislative body to impose certain hiring restrictions upon the judiciary. . . .

> No such limiting test is warranted or applicable where the hiring, firing and supervision of court-appointed personnel is concerned, and any law which encroaches upon or affects this power must be struck down unless there exists independent constitutional authorization.

> The collective bargaining and judicial funding cases cited by appellants prove the very

point they seek to refute, namely that no limiting test is applicable in the court personnel area where hiring, firing and supervision are directly at issue.

92 Pa. Commonwealth Ct. at 262-3, 501 A.2d at 700. As stated in the statutory provision quoted above, the rule is that the exercise of their responsibilities by the county commissioners must *in no way* affect the hiring, discharging and supervising rights vested in the judges of the court.

*Soltis Appeal,* 390 Pa. 416, 135 A.2d 744 (1957), held that compulsory retirement does not constitute a discharge or dismissal within the context of civil service statutes. However, that distinction is of no moment in this case, where the focus is upon the resulting unavailability of the employee's services to the employer, rather than upon the characterization of the mode of removal as affected by whatever job rights the employee may have.

## Conclusion
Judgment in favor of respondents is required.

### ORDER

Now, March 17, 1986, judgment is granted for respondents, the President Judge and Judges of the Court of Common Pleas of Blair County.

---

DISSENTING OPINION BY JUDGE DOYLE:

I respectfully dissent. The narrow issue before this Court is whether the County's resolution mandating retirement at age seventy for all County employees encroaches upon the exclusive authority of Judge PEOPLES as President Judge to hire, supervise, and discharge his court crier and two part-time court attendants.

The majority, citing *Eshelman v. Commissioners of the County of Berks*, 62 Pa. Commonwealth Ct. 310, 436 A.2d 710 (1981) *affirmed per curiam, Eshelman v. American Federation of State, County and Municipal Employees, District Council 88*, 502 Pa. 430, 466 A.2d 1029 (1983), correctly begins its analysis with a review of the constitutional separation of powers doctrine. In *Eshelman* this Court held that an arbitrator's award pertaining to court appointed employees which award included "provisions seeking to govern the discharge, demotion, suspension, and discipline of employees; employee rest periods; employee leaves of absence; employee seniority; and employee classification" unconstitutionally impinged upon the independence of the judiciary. *Id*. at 313, 436 A.2d at 712. Unconstitutional infirmity, however, is not equatable with unfettered and unabridged control over all aspects of employment. Unless the challenged resolution impairs the judiciary's power to hire, discharge or supervise, it must be allowed implementation with respect to court appointed personnel. No argument is advanced that the resolution here in question impairs supervisory authority. Thus we need not consider that issue. With respect to hiring, Judge PEOPLES asserts that the resolution, if enforced against the judiciary, precludes judges from hiring persons over seventy years of age.[1] There has been no allegation that any judge has actually sought to hire an employee age seventy or older. But if mandatory retirement is permissible, the practical effect would of course be to limit hiring as well.

The question thus presented is whether mandatory retirement constitutes a discharge or an unreasonable circumscription on hiring. My research has disclosed no

---

[1] Judges themselves are subject to mandatory retirement at age 70. *See* Pa. Const. Art. V, §16(b).

case directly on point. There is, however, case law establishing, in the context of civil service employment, that mandatory retirement is *not* a discharge and hence that a civil servant has no right to a hearing upon being mandatorily retired. *Soltis Appeal,* 390 Pa. 416, 135 A.2d 744 (1957). In *Soltis* the Supreme Court noted, "a known and marked difference exists between the words 'dismissal' and 'retirement'." *Id.* at 420, 135 A.2d at 746. Admittedly, *Soltis* is not controlling here. Yet it is instructive in its recognition that discharge or dismissal is usually a premature termination based upon fault and hence mandates a judgment as to the quality of an employee's work performance. The *Soltis* court wrote, "[t]his is not a dismissal, based upon misconduct, incompetence or political affiliation, but retirement based upon age limitation." *Id.* at 418, 135 A.2d at 745. Although this comment was made specifically in the context of assessing whether a retired employee should be granted a hearing, I do not believe that its recognition that dismissal is usually fault based need be limited only to the issue of whether a hearing is required. Rather, I believe it expresses the general connotation which accompanies involuntary dismissal or discharge in the employment context.

With this in mind it is clear that when the reason for cessation of an employer/employee relationship requires an *individual assessment or judgment* of a court employee's performance or suitability, that assessment must be made by the judiciary so as to protect the independence of that branch of government. But mandatory retirement is an across the board policy which does not require individualized judgment for its implementation. First, built into the mandatory retirement system is a date which is predictable at the outset, and second, absent from the system is any need for assessment of an employee's performance. Thus, I do not believe that the

County when it passed its resolution usurped from the judiciary the power to make individualized subjective judgments on the employment of court personnel. And in my view it is this usurpation of individual subjective judgment which the separation of powers doctrine seeks to preclude. The majority would hold that when the County mandate removes an employee *"whatever the policy reason may be,"* the judicial branch has necessarily lost the service of the employee just as surely as if the County had arbitrarily reached out to dismiss the individual from the judicial domain. I maintain that it is just such an examination of County policy that is essential to determine on which side of the constitutional divide the authority will flow. Not *all* personnel or fiscal policy restriction is arbitrary. Each case must be examined in its own context and setting to determine whether or not the inherent authority of the judiciary is being diminished or encroached upon so as to impair those things that are reasonably necessary for the administration of justice. By placing limits on the number of employees and their salary ranges a county essentially removes certain personnel from the court's employment pool just as surely as if the employees were mandatorily retired. *See Leahey v. Farrell,* 362 Pa. 52, 66 A.2d 577 (1949). I cannot agree, therefore, with the conclusion of the majority that the termination of a judicial employee by external authority, without *any* regard for the mechanism of removal, be it a fiscal program or a personnel policy of some kind, is warranted. It is important to keep in mind that the inherent power of the judiciary to hire, supervise, and fire exists so that the courts can perform all activities which are *reasonably* necessary for the administration of justice. *Eshelman.* While it is certainly true that older employees because of their years of experience may *facilitate* the carrying on of court business, I do not believe that without these employees

the courts would actually be unable "to perform properly the duties delegated to [them] by the Constitution." *Eshelman*, 62 Pa. Commonwealth Ct. at 314, 436 A.2d at 712. Believing that the resolution is constitutional as it applies to the retirement of court personnel, I would grant judgment for the County.