620 A.2d 1133

**The Honorable Edwin L. SNYDER, President Judge of the Court of Common Pleas of Jefferson County and the 54th Judicial District of the Commonwealth of Pennsylvania, Plaintiff,**

v.

**Keith D. SNYDER, Paul S. McMillen and Andrew S. Laska, Jefferson County Commissioners, and Keith D. Snyder, Paul S. McMillen, Andrew S. Laska, Dale Corbin and Edwin L. Snyder, Members of the Jefferson County Salary Board, Defendants.**

Supreme Court of Pennsylvania.

Argued Dec. 7, 1990.

Decided Feb. 25, 1993.

## OPINION

NIX, Chief Justice.

This matter originated as a complaint in mandamus whereby President Judge Edwin Snyder (hereinafter referred to as

the "Plaintiff") sought to compel Jefferson County to provide funds reasonably necessary to administer the judicial system in Jefferson County for fiscal year 1989. The complaint also demanded attorneys fees and costs. The defendants, who include the Commissioners of Jefferson County and the members of its Salary Board, denied the allegations and further argued that the action could not be entertained because the Plaintiff failed to assert his rights in a timely fashion, a charge which he later denied. The Plaintiff then petitioned this Court to exercise plenary jurisdiction over the case. We granted the petition and appointed Judge Silvestri Silvestri of the Court of Common Pleas of Allegheny County as Master.[1] Following a hearing, Judge Silvestri filed a report in which he recommended that we dismiss the complaint. He also deferred the question of counsel fees until the conclusion of this matter. The Plaintiff filed exceptions to the report, and today we consider both the report and the exceptions.

Before discussing the merits of the Plaintiff's claim, we provide the following background. Any budget for the Jefferson County court system is first filed with the County Commissioners, who are given an opportunity to review it. The County Commissioners determine whether to adopt the non-salary portion of the budget, while the salary portion is formally implemented by the Salary Board. The Salary Board includes the three County Commissioners, the President Judge of the Court of Common Pleas of Jefferson County, and the County Treasurer. The 1989 fiscal year budget that the Plaintiff submitted contained a 5% increase for all salaries of court employees. The Salary Board denied this request and instead fixed salaries for all county employees, including court personnel, at 1988 levels. This complaint was filed in order to compel payment of the amount that was refused.[2]

1. Judge Silvestri is now a Senior Judge on the Commonwealth Court.

2. The original complaint also sought to compel payment of amounts refused for certain capital expenses. However, the Plaintiff later proposed that the Master conclude that those requests had been resolved. The Master concluded that the requests for capital outlays had been satisfied in one way or another. The Plaintiff nevertheless urges this

The Plaintiff provided a list of the various positions which he claims were underfunded. The Master made a number of adjustments to this list in order to reflect appropriations that were made and other developments that took place after this suit was filed. The Plaintiff did not take exception to any of these adjustments. The following table summarizes the positions for which the Master made the finding that appropriations fell short of budget requests.

| Office | Requested | Appropriated | Difference |
|---|---|---|---|
| Court Administrator | $ 21,770 | $ 20,743 | $1,027 |
| Judge's Secretary | 16,867 | 16,071 | 796[3] |
| Domestic Relations Director | 21,034 | 20,042 | 992 |
| Chief Adult Probation Department | 26,190 | 23,696 | 2,494 |
| Chief Juvenile Justice Department | 24,350 | 23,201 | 1,149 |
| | $110,211 | $103,753 | $6,458 |

The Plaintiff arrived at his salary requests by relying on a salary schedule first adopted by the Commissioners in 1986. Developed by the Pennsylvania Economy League, the schedule consisted of ranges of salaries for thirty job classifications. Within each range, there were seven steps, each of which represented an increase of approximately 5% over the preceding step. During the first year the schedule went into effect, each employee was assigned to a classification level based on job responsibilities and a step corresponding to his/her experience. In the two subsequent years, the Plaintiff requested salaries corresponding to the next step in the range to which an individual was assigned. He followed the same procedure to prepare his 1989 salary budget proposal. However, whereas his two earlier requests were granted, his 1989 request was denied.

The foundation of the salary schedule was a study conducted by the Pennsylvania Economy League. At the county's request, it surveyed eight public and private sector employers

Court to declare whether or not the items were reasonably necessary when they were originally denied. We see no purpose in doing so when relief is neither sought nor available. Rather, we will confine our discussion to an examination of salary increases that were denied.

**3.** This figure incorrectly appeared as 791 in the Master's Report.

to determine average starting salaries and annual increases paid to individuals performing specific job functions. An updated study conducted in 1988 revealed that the salaries for Jefferson County employees lagged behind those offered by ten employers responding to the survey. In order to make up the difference, the Pennsylvania Economy League recommended that the entire salary scale be revised upwards by 5%.

Both the 1986 and 1988 salary scales and the accompanying reports were introduced into evidence to support the Plaintiff's salary requests. The Plaintiff also attempted to justify his salary requests by pointing to a desire to avoid generating an "atmosphere of uncertainty" that could lead to staff departures and have a negative effect on morale and intensity level. He also made general references to an increase in the court's caseload, but offered no specific figures or statistics in support thereof.

The Master denied the salary requests. In reaching his conclusion, the Master explained that while the surveys and salary scales could be used to determine the reasonable necessity of salary requests, the information had to be considered in conjunction with evidence relating to the court's entire dispute resolution process. However, in his view, that evidence was not supplied. He placed greatest emphasis on the Plaintiff's failure to be more specific with respect to the court's past, present and projected case load as well as the case disposition rate. The Master described this data as "critical" information, without which he could not conclude that the Plaintiff met his burden of proof. It was on that basis that the Master denied relief.[4]

The Plaintiff registers three complaints about the Master's Report. First, he argues that the Master in effect required the court to show that the funding being requested was absolutely necessary, not simply reasonably necessary. Sec-

---

4. The Master also noted that the Plaintiff's opinions regarding the consequences of an atmosphere of uncertainty were defied by his testimony. The Plaintiff admitted that none of the affected personnel threatened to quit. He also testified that the court's work was not impaired.

ond, he argues that the Master erroneously required a higher standard of proof than our cases require. Third, he asserts that he in fact met his burden of proving that his budget requests were reasonably necessary. This third argument addresses the pivotal issue in this case, and since it fails, it is the only argument we will discuss.

We recently described the kind of evidence a plaintiff court must provide in order to meet its burden of proving the reasonable necessity of its salary requests. In *Lavelle v. Koch*, 532 Pa. 631, 617 A.2d 319 (1992), we said that

[g]enerally, a court seeking salary increases will meet its burden by showing that its proposed salaries are reasonably necessary to attract and retain qualified people. This Court cannot make that determination without knowing how current and proposed salaries compare with those offered by other employers with whom the court competes.

*Id.* at 636, 617 A.2d at 322.

Our analysis in *Lavelle* recognized that the exercise of the inherent judicial power to compel funding is reserved for exceptional cases in which a legislative act poses "a *genuine threat* to the administration of justice, that is, [there must be] a nexus between the legislative act and the injury to the judiciary, not merely a theoretical encroachment by the legislature." *Beckert v. Warren*, 497 Pa. 137, 147, 439 A.2d 638, 643 (1981); *Ellenbogen v. County of Allegheny*, 479 Pa. 429, 438, 388 A.2d 730, 735 (1978); *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Bd.*, 479 Pa. 440, 447–48, 388 A.2d 736, 739–40 (1978). Logic dictates that the judiciary faces such a genuine threat if the legislature denies funds necessary for it to offer sufficiently competitive salaries to attract and retain qualified employees. Furthermore, in order to evaluate whether judicial staff salaries are sufficiently competitive, this Court must necessarily know what salaries are being offered by employers with whom the plaintiff court competes.

We emphasize that this Court cannot uncritically accept the evidence offered to establish the reasonable necessity

of a court's salary requests. To the contrary, we must scrutinize any evidence and question any assertions that are made by the plaintiff court. See *Lavelle,* 532 Pa. at 636–37, 617 A.2d at 322. This critical approach flows from our overriding concern with preserving the separation of powers that distinguishes our tripartite form of government. Our government operates on the premise that the executive, the legislature and the judiciary are independent, co-equal branches of government, none of which should exercise powers exclusively committed to another branch. *Beckert v. Warren,* 497 Pa. at 144–45, 439 A.2d at 642; *Zemprelli v. Daniels,* 496 Pa. 247, 254, 436 A.2d 1165, 1168 (1981); *Sweeney v. Tucker,* 473 Pa. 493, 507–08, 375 A.2d 698, 705 (1977). This allocation of governmental power is designed to avoid the tyranny that arises when absolute power is entrusted to a single body. The Federalist No. 47 (J. Madison).

█ We protect against the hazards of tyranny by invalidating acts by one branch which compromise the independent, co-equal status of another. Thus, in certain circumstances, the legislature's refusal to provide funds requested by the judiciary is a separation of powers violation because the legislative act interferes with the administration of justice. By the same token, the judiciary commits a separation of powers violation if it exercises a legislative power. We run the risk of doing just that when we order the legislature to fund the judiciary. After all, the spending power resides exclusively with the legislature, and the only time the judiciary acquires the power to compel funding is when it cannot independently and adequately administer justice because the legislature has not provided it with the funds to do so. *Beckert v. Warren,* 497 Pa. at 144, 439 A.2d at 642; *Commonwealth ex rel. Carroll v. Tate,* 442 Pa. 45, 52, 274 A.2d 193, 197 (plurality opinion), *cert. denied sub nom. Tate v. Pennsylvania ex rel. Jamieson,* 402 U.S. 974, 91 S.Ct. 1665, 29 L.Ed.2d 138 (1971); *Leahey v. Farrell,* 362 Pa. 52, 58, 66 A.2d 577, 579 (1949); *Commonwealth ex rel. Hepburn v. Mann,* 5 Watts & Serg. 403 (1843); *In re Surcharge of County Commissioners,* 12 Pa. D. & C. 471

(C.D. Lackawanna 1928) (Maxey, J.).   Therefore, in order to avoid committing a separation of powers violation, we scrutinize the evidence offered by the plaintiff court to verify that the legislative act indeed interferes with the administration of justice.   Relief cannot be granted unless we can make that determination.

After scrutinizing the evidence the Plaintiff offered in this case, we conclude that he has not met his burden of proof. The most substantial evidence he offered was the 1986 and 1988 surveys conducted by the Pennsylvania Economy League.   However, those reports are insufficient to support his contention that his salary requests were reasonably necessary because they do not indicate what the surveyed employers were paying their employees.   In the absence of that information, we are unable to assess whether the court's ability to attract and retain qualified employees is sufficiently impaired such that we can take the extraordinary step of exercising our inherent powers to compel funding.

Nevertheless, the Plaintiff urges us to accept the conclusions of the Pennsylvania Economy League.   Its reports claim that the proposed salary scales reflect salaries that would enable the government of Jefferson County to compete successfully with surveyed employers.   While those conclusions are persuasive, they are not dispositive in this case.   This is primarily because in order to arrive at figures it claims to reflect competitive salaries, the Pennsylvania Economy League relied on data collected from employers with whom the Jefferson County Court of Common Pleas does not appear to compete.   Specifically, of the nine employers responding to the 1986 survey, four are located outside Jefferson County and its adjacent counties.[5]   Of the eleven employers responding to the 1988 survey, five are located outside Jefferson County and

5.   Those four are Bradford County, Carbon County, Tioga County and Venango County.   The other employers were Clarion County, Clearfield County, Indiana County, the Brookville Area School District and the Punxsatawny Area Hospital.

its adjacent counties.[6] Two respondents to both surveys (Bradford and Carbon counties) are over 150 miles away.

By making these observations, we do not mean to suggest what the geographical boundaries of a labor market should be. Indeed, each case would involve its own unique set of boundaries, if any exist. However, in this instance we have serious doubts as to whether the surveyed employers actually compete in the same labor market from which the Jefferson County Court of Common Pleas draws its workers. Furthermore, the Plaintiff offers no argument or evidence that removes those doubts from our minds.[7] Under these circumstances, we cannot say that he has offered an adequate basis upon which we can determine whether his court's salary requests are reasonably necessary. Therefore, we conclude that he has not met his burden of proving reasonable necessity. Since that precondition for exercising this Court's inherent power to compel funding has not been satisfied, we must deny relief.

The Plaintiff also requests attorneys fees and costs. However, we must also deny this request. As a general rule, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception. *Chatham Communications, Inc. v. General Press Corp.*, 463 Pa. 292, 300–01, 344 A.2d 837, 842 (1975); *Shapiro v. Magaziner*, 418 Pa. 278, 280, 210 A.2d 890, 892 (1965). None of those situations is presented here, and the Plaintiff offers no persuasive reason to create a new exception today.[8]

6. Those five are Bradford County, Carbon County, Huntington County, McKean County and Venango County. The other employers were Clearfield County, Elk County, Indiana County, Brookville Area School District, Brookville Hospital and Punxsatawny Area Hospital.

7. The Master's analysis was misdirected because instead of questioning the reliability of the Pennsylvania Economy League's reports, he inquired into the court's case load and case disposition rate. That information is of little assistance when assessing whether salaries are set at sufficiently competitive levels.

8. The Plaintiff and Amicus argue that the costs associated with bringing this suit are themselves reasonably necessary for the proper functioning

Accordingly, the complaint in mandamus is dismissed. Counsel fees and costs are denied.

ZAPPALA and CAPPY, JJ., concur in the result.

McDERMOTT, J., did not participate in the consideration or decision of this case.

of the court. This argument is substantively identical to the one advanced by the plaintiff court in *Lavelle v. Koch*, 532 Pa. 631, 617 A.2d 319 (1992). In that case the plaintiff argued that the judiciary's inherent powers to compel funding are meaningless unless the legislative branch is obligated to cover the costs associated with bringing an action in mandamus. We dismissed that argument on the basis that it "ignores the fact that any member of this Commonwealth's judiciary can turn to the Administrative Office of the Pennsylvania Courts for 'legal services and, when appropriate, representation by legal counsel.'" *Id.* at 638, 617 A.2d at 323 (quoting Pa.R.J.A. No. 505 (15)). In other words, by funding the AOPC, the legislature has already made provisions for the judiciary to assert any constitutional or statutory rights it may enjoy. Therefore, by denying attorneys fees, we are not undermining the judiciary's power to respond to any separation of powers violation by the legislature. Of course, the AOPC is under no obligation to represent every court in every funding dispute that may arise. Nor is it under any obligation to pay someone else to do so. As the Pennsylvania Rules of Judicial Administration make clear, the AOPC has discretion to determine whether, in its judgment, a matter is "appropriate" for it to handle or to which it should devote its resources.