631 A.2d 1122

COMMONWEALTH of Pennsylvania ex rel. Honorable Jessa-
mine JIULIANTE, Individually and on behalf of the Judges of
the Erie County Court of Common Pleas, Sixth Judicial Dis-
trict, Appellants,

v.

The COUNTY OF ERIE and Judith Lynch, County
Executive of Erie County and Ronald Komorek,
Director of Finance of Erie County.

Commonwealth Court of Pennsylvania.

Argued June 16, 1993.

Decided Sept. 23, 1993.

Henry T. Reath and William J. Kelley, for appellants.

Kenneth D. Chestek, County Sol., for appellee, County of Erie.

Before CRAIG, President Judge, and COLINS, PALLADINO, McGINLEY, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

PALLADINO, Judge.

The Judges of the Court of Common Pleas of Erie County (Court) appeal an order of the Court of Common Pleas of Erie County[1] (trial court) granting the motion for summary judgment filed by the County of Erie (County). For the reasons which follow, we affirm.

This action stems from a dispute between the Court and the County as to whether the County's anti-nepotism policy was applicable to court-related employees. In 1982, the Erie County Personnel Code was amended to include an anti-nepotism policy which stated that where two County employ-

1. Senior Judge Breene of the Court of Common Pleas of Venango County was appointed by the Supreme Court to specially preside over this matter.

ees are from the same immediate family, one member of the family may not supervise any other member of the same family. The issue of the policy's application to court-appointed employees arose on October 3, 1984 when the Court assigned Thomas P. Antolik (Antolik) to the position of Chief Juvenile Probation Officer. In this capacity, Antolik had supervisory control over his younger brother, Andrew Antolik, a Juvenile Probation Officer. The County refused to reclassify Antolik claiming that the appointment violated the nepotism policy.

Because the County refused reclassification, the Court issued an *ex-parte* order stating that the County Personnel Code was inapplicable to appointments made by any member of the judiciary, and appointing Antolik to the position of Chief Juvenile Probation Officer.

The County appealed the *ex-parte* order to the commonwealth court. Without consulting the County concerning its responsibility for the payment of the Court's legal fees, the Court hired the firm of Duane, Morris & Heckscher (Firm) to represent its interests in the appeal. In a published opinion and order, this court held that the anti-nepotism policy was constitutionally inapplicable to court-appointed personnel because it impinged upon the judiciary's right to hire, fire and supervise its employees. *In the Matter of the Appointment of Thomas P. Antolik (Antolik I),* 93 Pa.Commonwealth Ct. 258, 501 A.2d 697 (1985).

Following termination of the appeal process, the Firm submitted a bill for services to the Court, which then submitted the bill to the County. The County refused to pay the bill, asserting that the Administrative Office of the Pennsylvania Courts (AOPC) was the responsible party. AOPC denied responsibility and refused payment. Thereafter, the Court issued a second *ex-parte* order directing the County to pay the bill.

The County appealed the second order to the commonwealth court and the Court again retained the Firm to represent its interests. In a published opinion and order, this court

held that the *ex-parte* order of the Court violated due process and did not constitute an adjudication of rights. *In the Matter of the Appointment of Thomas P. Antolik (Antolik II)*, 124 Pa.Commonwealth Ct. 5, 555 A.2d 273 (1992), *petition for allowance of appeal denied*, 523 Pa. 637, 565 A.2d 446 (1989). Therefore, we remanded the matter for adversarial proceedings. *Id.*

On March 8, 1992, the Court filed a complaint in mandamus in the court of common pleas, seeking an order directing the County to pay for legal services incurred by the Court in defending itself against the application of the County anti-nepotism policy to court-related employees and in seeking to impose the counsel fees upon the County.

On December 2, 1992, the County filed a motion for summary judgment asserting that the supreme court's decision in *Lavelle v. Koch*, 532 Pa. 631, 617 A.2d 319 (1992), controlled the outcome of the present action and required judgment in favor of the County as a matter of law. The trial court agreed and granted the County's motion for summary judgment.

On appeal to this court,[2] the issue presented is whether the trial court erred in concluding that a county is not responsible for the payment of legal fees incurred by the judges of that county in challenging the application of a county policy to court employees.[3]

A grant of summary judgment pursuant to Pa.R.C.P. No. 1035(b) is appropriate only if the pleadings, depositions,

2. Our scope of review of a trial court's order granting summary judgment is limited to determining whether an error of law was committed or whether the trial court abused its discretion. *Lyons v. City of Pittsburgh*, 137 Pa.Commonwealth Ct. 330, 586 A.2d 469, *petition for allowance of appeal denied*, 527 Pa. 670, 593 A.2d 845 (1991).

3. At oral argument, counsel for the Court asked this court to address: (1) whether he should be paid for his services; and (2) if so, who is responsible for payment, the County or AOPC. We note, however, that despite the answer to the first question, the issue of whether some entity other than the County is liable for payment of the Court's counsel fees is not before us. AOPC is not a defendant in this action, and therefore, we decline to make decisions regarding AOPC's responsibilities with respect to payment of the legal fees in question.

answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205 (1991). In ruling on such a motion we must view the evidence in the light most favorable to the non-moving party. *Id.*

 The Court asserts two arguments in support of its position. First, the Court urges us to conclude that the trial court's grant of summary judgment based on *Lavelle* was erroneous because the facts of *Lavelle* are distinguishable from those of the present action. Second, the court argues that this case warrants the exercise of our equitable powers to award attorneys' fees and interest because, much to the embarrassment of the judges who hired it, the Firm has not been paid a single penny for its successful efforts in challenging the County's unconstitutional actions.

With respect to its first argument, the Court specifically asserts that the instant action is distinguishable from *Lavelle* because in *Antolik I,* this court determined that the judges of the Court of Common Pleas of Erie County faced a genuine threat to the constitutional integrity of the court system, something which the supreme court concluded did not exist in *Lavelle.* Therefore, the Court argues that the supreme court's holding with respect to attorneys' fees and costs in *Lavelle* is inapplicable to the present action. We disagree.

In *Lavelle,* the president judge of the Court of Common Pleas of Carbon County (P.J. Lavelle) brought a mandamus action against the county seeking to compel the county commissioners, sitting as the county salary board, to appropriate and disburse funds for county court employee salaries. In addition, P.J. Lavelle sought to impose the legal costs associated with bringing the action upon the county.

The supreme court concluded that P.J. Lavelle had failed to meet his burden of proving that the proposed salaries were reasonably necessary to attract and retain qualified personnel, and therefore, the supreme court could not determine whether

the Court of Common Pleas of Carbon County faced a genuine threat to the integrity of its court system.

With respect to the issue of responsibility for the payment of the legal costs associated with litigating the action against the county, P.J. Lavelle argued that the judiciary's powers to compel funding are meaningless unless the legislative branch is obligated to cover the costs associated with bringing an action in mandamus. The supreme court denied his request for attorneys' fees and costs, stating that Judge Lavelle's argument, "ignores the fact that any member of the judiciary can turn to the [AOPC] for 'legal services and, when appropriate, representation by legal counsel.' Pa.J.R.A. No. 505(15)." *Lavelle*, 532 Pa. at 638, 617 A.2d at 323.

The supreme court's decision in *Lavelle* was reaffirmed in *Snyder v. Snyder*, 533 Pa. 203, 620 A.2d 1133 (1993). In *Snyder*, the judges of the Court of Common Pleas of Jefferson County sought to compel the county commissioners to provide funding for the judiciary. Again, the supreme court determined that the judges failed to meet their burden of proving that the requests were reasonably necessary for the administration of justice. With respect to payment of legal fees, the judges and amicus argued that the costs associated with bringing a suit against the county are themselves reasonably necessary for the proper function of the court. The supreme court concluded that this argument was substantively identical to the one raised in *Lavelle* and denied the request for attorneys fees and costs.

At the inception of the present action, two issues were presented. The first was resolved in *Antolik I*, wherein this court concluded that the application of the anti-nepotism policy to court-appointed employees created an unconstitutional result. The sole issue remaining is whether the County is the party responsible for payment of the Court's legal fees and costs incurred in litigating the first issue.

The Court argues that the County's refusal to provide funds to pay for the legal fees and costs associated with pursuing the

action against the County is itself a genuine threat to the administration of justice. Moreover, the Court argues that the statutory scheme for court funding provides the judges with the statutory power to compel reimbursement by the County.

We conclude that these arguments are simply restatements of those asserted and rejected by the supreme court in *Lavelle* and *Snyder*. In both of those cases, the supreme court clearly indicated that payment of legal fees by an adverse party is an issue separate and distinct from that which addresses whether the legislative branch has provided adequate funding for the judicial branch. In the present action, the County did not deny funding to the Court, it denied responsibility for payment of counsel fees. Therefore, we conclude that the Court's assertions concerning the statutory scheme of court funding and the judiciary's inherent power to compel funding when the legislature's denial of funds genuinely threatens the administration of justice are inapplicable.

As the supreme court has consistently held, "in this Commonwealth, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception. *Chatham Communications Inc. v. General Press Corp.*, 463 Pa. 292, 300–01, 344 A.2d 837, 842 (1975); citing *Shapiro v. Magaziner*, 418 Pa. 278, 280, 210 A.2d 890, 892 (1965)." *Lavelle*, 532 Pa. at 638, 617 A.2d at 323.

Because none of the above-stated criteria have been met, we conclude, as a matter of law, that the County is not responsible for the payment of counsel fees and costs incurred by the Court in this matter.

Moreover, we reject the Court's argument that this case warrants the exercise of our equitable powers. The supreme court decisions in *Lavelle* and *Snyder* are binding precedent upon this court and cannot be disregarded simply by characterizing the relief requested as equitable.

Accordingly, the order of the trial court granting summary judgment in favor of the County is affirmed.

## ORDER

AND NOW, September 23, 1993, the order of the Court of Common Pleas of Erie County in the above-captioned matter is affirmed.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. Under the present system of funding, the County of Erie is obligated to pay for legal fees incurred by the Sixth Judicial District to prevent the unconstitutional intrusion by the County in the court's internal operation.

In 1982, the Erie County Personnel Code (Code) was amended to include an anti-nepotism policy which provided that when two County employees were from the same family, one family member could not supervise another family member. In this case, the Court of Common Pleas of Erie County (Court) appointed Thomas P. Antolik (Antolik) to the position of Chief Juvenile Probation Officer, who then had supervisory control over his younger brother, Andrew Antolik, a Juvenile Probation Officer. When the County of Erie (County) refused to reclassify Antolik on the basis that the appointment violated the nepotism policy, the Court issued an *ex parte* order stating that the Code was inapplicable to appointments made by the judiciary.

The County appealed the *ex parte* order to this court. Without consulting the County regarding the responsibility for payment of the Court's legal fees, the Court hired the law firm of Duane, Morris & Heckscher (Firm) for representation. Subsequently, this court issued an order which held that the anti-nepotism policy was constitutionally inapplicable to court-appointed personnel because it impinged on the judiciary's right to hire, fire and supervise its employees. *See In the Matter of the Appointment of Thomas P. Antolik (Antolik I),* 93 Pa.Commonwealth Ct. 258, 501 A.2d 697 (1985).

The Firm submitted its bill for services to the Court, which, in turn, submitted the bill to the County. The County refused to pay the bill, arguing that the Administrative Office of the Pennsylvania Courts (AOPC) was responsible for such payments. AOPC, however, refused to pay the bill as well. The Court then issued a second *ex parte* order directing the County to pay the bill. The County appealed that order to this court and the Court again retained the Firm for representation. We held that the *ex parte* order of the Court violated due process and did not constitute an adjudication of rights. *See In the Matter of the Appointment of Thomas P. Antolik (Antolik II)*, 124 Pa.Commonwealth Ct. 5, 555 A.2d 273, *petition for allowance of appeal denied*, 523 Pa. 637, 565 A.2d 446 (1989).

The Court then filed a complaint in mandamus in the Court of Common Pleas of Erie County seeking an order directing the County to pay for the legal services it incurred in implementing the County's anti-nepotism policy. The County filed a motion for summary judgment which the trial court granted on the basis of our Supreme Court's decision in *Lavelle v. Koch*, 532 Pa. 631, 617 A.2d 319 (1992). This appeal by the Court followed.

The majority resolves this dispute in favor of the County, primarily relying on *Lavelle*. In *Lavelle*, President Judge Lavelle brought a mandamus action against the county seeking to compel the county commissioners to appropriate and disburse funds for county court employee salaries and seeking legal fees associated with that action. After determining that Lavelle had failed to provide evidence that the proposed salaries were reasonably necessary to avoid a genuine threat to the administration of justice, our Supreme Court held that he was not entitled to legal fees because there was no statute or established exception authorizing such an award. Although Lavelle argued that the judiciary's inherent powers to compel funding would be meaningless unless the legislative branch was obligated to cover the costs associated with bringing an action in mandamus, the Supreme Court responded:

[T]hat argument ignores the fact that any member of this Commonwealth's judiciary can turn to the Administrative Office of Pennsylvania Courts for 'legal services and, when appropriate, representation by legal counsel.' Pa.R.J.A. No. 505(15). Thus, it cannot be said that our decision to deny attorney's fees and costs deprives the judiciary of a vital 'checking' power over the legislative branch.

*Id.*, 532 Pa. at 638, 617 A.2d at 323.

While I agree that *Lavelle* is dispositive that the shifting of counsel fees to the County is not necessary to maintain the independence of the judiciary because of the availability of counsel from AOPC, it did not address the entity that is legally obligated to pay counsel fees under the system of court funding as it exists today. Moreover, it is not a question of fee shifting, but one of who has the primary obligation to pay for legal services incurred by a judicial district in carrying out its responsibilities.[1]

42 Pa.C.S. § 3722 provides that the County is to provide the Courts of Common Pleas with funding necessary for operation of their common pleas, including "services." It provides that:

Except as otherwise provided by statute, each county shall continue to furnish to the court of common pleas and community court embracing the county, to the minor judiciary established for the county and to all personnel of the system, including central staff entitled thereto, located within the county, *all necessary accommodations, goods and services* which by law have heretofore been furnished.

In *County of Allegheny v. Commonwealth*, 517 Pa. 65, 534 A.2d 760 (1987), our Supreme Court found that the system of

---

1. If a county controller sued the county commissioners to stop them from illegally interfering with the operation of his or her office and he or she was successful, the payment of counsel fees would not involve fee shifting. Because the county solicitor has a conflict and cannot represent both parties, the county has an obligation to provide him or her with counsel. Otherwise, a county would always be successful in these types of disputes.

county funding of the judicial system violated Article 5, Section 1 of the Pennsylvania Constitution because the requirement that there be a unified judicial system mandates that the funding for all judicial districts be uniform and not dependent on adequate appropriations for 67 different Boards of County Commissioners. However, while holding that the funding of the judicial system was a Commonwealth function, the Supreme Court held that the county funding of the judicial system would remain in effect until after the General Assembly enacted a funding system to conform with the court's constitutional funding directives. *Id.*, 534 A.2d at 765. That funding system has never been implemented and the counties continue to fund the operations of the judicial districts.

Because the counties are still required to fund the judicial districts, I believe that they still have a continuing legal obligation to fund all services, including legal services, necessary for the judicial districts to function. The County attempted to unconstitutionally impose a personnel system on the Sixth Judicial District. It was necessary for the Sixth Judicial District to seek legal relief from that unconstitutional exercise of power. Under the system of county funding that remains in effect, the County of Erie is obligated to pay for those legal services expended to prevent that from happening even if the County was the entity doing the interfering. Accordingly, I respectfully dissent.

COLINS, J., joins in this dissent.