657 A.2d 1245

COMMONWEALTH of Pennsylvania, ex rel. Hon. Jessamine JIULIANTE, individually and on behalf of the judges of the Erie County Court of Common Pleas, Sixth Judicial District, Appellants

v.

The COUNTY OF ERIE and Judith Lynch, County Executive of Erie County, and Ronald Komorek, Director of Finance of Erie County, Appellees.

Supreme Court of Pennsylvania.

Argued Sept. 20, 1994.

Decided May 15, 1995.

Henry T. Reath, Duane, Morris & Heckscher, William J. Kelly, Philadelphia, for appellants.

Francis J. Catania, Stephen A. Wydrzynski, Sprague & Sprague, Media, for amicus curiae Pennsylvania Conference of State Trial Judges.

Clifford A. Rieders, Williamsport, for Pennsylvania Bar Ass'n.

Kenneth D. Chestek, Agresti & Agresti, Erie, for appellees.

Robert L. Knupp, Knupp & Kodak, Harrisburg, for amicus curiae County Comm'rs of Pennsylvania.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

### OPINION

ZAPPALA, Justice.

This matter originated with the filing of a complaint in mandamus by Judge Jessamine Jiuliante on behalf of the judges of the Erie County Court of Common Pleas against the County of Erie to recover attorney's fees accrued during litigation involving the applicability of an anti-nepotism policy to court-related employees. Senior Judge Breene of the Venango County Court of Common Pleas, who was appointed by this Court to preside over the matter, granted the County's

motion for summary judgment. The Commonwealth Court affirmed. We granted the petition for allowance of appeal filed by the Erie County Court of Common Pleas and now reverse.

On October 4, 1984, Thomas P. Antolik was appointed to the position of Chief Juvenile Probation Officer by order of the Erie County Court of Common Pleas. Erie County officials appealed from the order to the Commonwealth Court, asserting that the appointment violated an anti-nepotism provision of the Erie County Personnel Code. The Personnel Code prohibited any employee from supervising an immediate family member. The Director of Personnel of Erie County refused to reclassify Antolik to the appointed position based on the anti-nepotism policy because Antolik's brother had been hired three months earlier to fill a position as a Juvenile Probation Officer. Although the brother's immediate supervisor was not a member of the Antolik family, he did report in turn to the Chief Juvenile Probation Officer. Therefore, the appointment of Thomas Antolik to that position conflicted with the anti-nepotism policy.

The Commonwealth Court held that the anti-nepotism policy was inapplicable to court-appointed personnel. *In the Matter of the Appointment of Thomas P. Antolik,* (Antolik I), 93 Pa.Cmwlth. 258, 501 A.2d 697 (1985). The separation of powers doctrine formed the basis for this holding. The origin of the separation of powers doctrine was not extensively addressed, but the independence of the judiciary was of foremost concern. Article V of the Pennsylvania Constitution bestows upon the judiciary certain inherent rights and powers to do what is reasonably necessary for the administration of justice. The judiciary's authority to hire, fire, and supervise its personnel is derived from that constitutional source. It is a power that "may not ... be policed, encroached upon or diminished by another branch of government." *Id.,* 93 Pa. Cmwlth. at 265, 501 A.2d at 701, citing *Eshelman v. Commissioners of Berks County,* 62 Pa.Cmwlth. 310, 312–15, 436 A.2d 710, 712 (1981), *aff'd per curiam,* 502 Pa. 430, 466 A.2d 1029 (1983).

The County had argued that the limiting tests of "actual impairment of the operations of the judiciary" or "genuine threat to the administration of justice," which have been employed in the context of collective bargaining and mandamus actions compelling judicial funding, should be applied and that the hiring restrictions did not constitute such an impairment or threat. This argument was emphatically rejected. The Commonwealth Court stated, "No such limiting test is warranted or applicable where the hiring, firing and supervision of court-appointed personnel is concerned, and any law which encroaches upon or affects this power must be struck down unless there exists constitutional authorization." *Id.*, 93 Pa.Cmwlth. at 262–63, 501 A.2d at 700. The court recognized that the County's presumption that its policy would have a beneficial effect or promote the public interest in ethical conduct could not take precedence over the public interest in maintaining the independence of its judiciary. The latter public interest is paramount as it is expressed in the form of a constitutional mandate.

The application of the anti-nepotism policy to court-appointed personnel was found to be an impermissible encroachment upon the right of the judiciary to hire, fire, and supervise court employees. The Commonwealth Court observed that "[l]aws purporting to subject the judiciary to regulation by the Legislature or the Executive, not founded upon independent constitutional authorization, have been regularly struck down by our Supreme Court as violative of the separation of powers principle." *Id.*, 93 Pa.Cmwlth. at 265–66, 501 A.2d at 701. The anti-nepotism policy of the Erie County Personnel Code was stricken as to Antolik and those similarly situated because it interfered with the judiciary's constitutional authority.

The Commonwealth Court's order affirming the order of the Erie County Court of Common Pleas was entered on November 29, 1985. Erie County filed a petition for allowance of appeal that was denied by this Court's order on October 3, 1986. Thereafter, the law firm which had represented the judges of the Erie County Court of Common Pleas during the course of the *Antolik* litigation submitted a bill for its services

to the judges. The judges approved the bill and submitted it to Erie County for payment. Erie County refused to pay any bill for legal services related to *Antolik* and denied responsibility for payment.

On December 17, 1986, Ralph L. Lurker, the Court Administrator for the Erie County Court of Common Pleas, forwarded a copy of the bill for legal services and other correspondence with Erie County to the Administrative Office of the Pennsylvania Courts (AOPC) for review. Mr. Lurker requested that the bill be reviewed to determine whether the AOPC would be responsible for payment of the bill under the Pennsylvania Rules of Judicial Administration. By letter dated January 8, 1987, Charles W. Johns, Esq., Chief Legal Counsel to the Court Administrator of Pennsylvania, advised Mr. Lurker that Erie County was responsible for payment of the bill incurred by the common pleas court in defending itself in the action brought by the County.

On November 18, 1987, Judge William E. Pfadt, then President Judge of the Erie County Court of Common Pleas, entered an ex parte order directing Erie County to pay the fees and expenses that were owed to the law firm. Erie County appealed from that order to the Commonwealth Court. Erie County asserted that the common pleas court's entry of an ex parte order requiring payment of counsel fees without the filing of a pleading, discovery proceedings, and a hearing before an impartial tribunal was a violation of due process of law. The Commonwealth Court held that the central requirements of procedural due process, notice and fair opportunity to be heard, had been disregarded by the common pleas court's order. The order was vacated and the matter was remanded with leave to the trial court judges to file a complaint. *In the Matter of the Appointment of Thomas P. Antolik,* (Antolik II), 124 Pa.Cmwlth. 5, 555 A.2d 273 (1989). We denied the common pleas court's petition for allowance of appeal and application to assume plenary jurisdiction on September 13, 1989.

A complaint in mandamus was then filed on behalf of the common pleas court judges to recover the legal fees from Erie

County. Erie County filed an answer and new matter denying responsibility for payment of legal fees and challenging the reasonableness of the fees. Erie County asserted also that any expenses incurred in defense of the state's unified judicial system must be paid for by the state. The County also filed a counterclaim requesting that attorney's fees be awarded in its favor against the law firm representing the common pleas court based on allegations that the law firm "engaged in a course of vexatious and obdurate conduct in seeking improper methods to enforce its private rights." (R. 134a). Preliminary objections to the new matter and counterclaim were sustained and the counterclaim was dismissed in an order entered on February 28, 1992.

Erie County then filed a motion for summary judgment asserting that this Court's decision in *Lavelle v. Koch*, 532 Pa. 631, 617 A.2d 319 (1992), issued on November 25, 1992, was controlling and required dismissal of the complaint. On December 8, 1992, Judge Breene heard oral argument on the motion and immediately thereafter issued an order from the bench granting summary judgment in favor of Erie County. The common pleas court's motion for reconsideration was denied.

On appeal to the Commonwealth Court, the common pleas court judges argued that the trial court's grant of summary judgment based upon *Lavelle* was erroneous because the cases are distinguishable, and that the statutory scheme for court funding provides the judges with the authority to compel reimbursement by Erie County. The Commonwealth Court concluded that the arguments were restatements of those considered and rejected by this Court in *Lavelle* and our later decision in *Snyder v. Snyder*, 533 Pa. 203, 620 A.2d 1133, (1993), stating

> In both of those cases, the supreme court [sic] clearly indicated that payment of legal fees by an adverse party is an issue separate and distinct from that which addresses whether the legislative branch has provided adequate funding for the judicial branch. In the present action, the County did not deny funding to the Court, it denied respon-

sibility for payment of counsel fees. Therefore, we conclude that the Court's assertions concerning the statutory scheme of court funding and the judiciary's inherent power to compel funding when the legislature's denial of funds genuinely threatens the administration of justice are inapplicable.

*Commonwealth of Pennsylvania ex rel. Honorable Jessamine Jiuliante v. County of Erie,* 158 Pa.Cmwlth. 508, 514, 631 A.2d 1122, 1123 (1993). The Commonwealth Court held that Erie County was not responsible for the payment of attorney's fees as a matter of law.

Judge Pellegrini filed a dissenting opinion, which was joined by Judge Colins, on the basis that Erie County was obligated to pay for the legal fees incurred by the common pleas court to prevent the unconstitutional intrusion by the County in the court's internal operation. He concluded that under the current system of county funding of judicial districts, the counties have the primary obligation to fund all services, including legal services, necessary for the judicial districts to function. The statutory provision requiring the counties to fund court operations, 42 Pa.C.S. § 3722, was cited in support of this conclusion.

On appeal to this Court, the common pleas court judges advance several arguments for our consideration of whether Erie County is responsible for payment of the legal fees incurred in the course of the *Antolik* litigation. In summary, the obligation to pay the legal fees is said to arise either from the statutory duty imposed upon the counties to fund the courts or from the judiciary's inherent authority to insure its independence as a separate and equal branch of government. It is asserted also that there are compelling public policy reasons to require Erie County to pay the legal fees as part of the necessary services provided to the court.

"[A] litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception." *Lavelle v. Koch,* 532 Pa. at 638, 617 A.2d at 323 (1992)

(Citations omitted.) The common pleas court judges contend that, as suggested by Judge Pellegrini's dissent in this case, statutory authorization exists under 42 Pa.C.S. § 3722 to impose counsel fees upon Erie County. Section 3722 provides that,

Except as otherwise provided by statute, each county shall continue to furnish to the court of common pleas and community court embracing the county, to the minor judiciary established for the county and to all personnel of the system, including central staff entitled thereto, located within the county, all necessary accommodations, goods and services which by law have heretofore been furnished.

Erie County argues that this section cannot be said to apply to providing legal representation to the court system because the counties have not heretofore been responsible for paying the costs of legal counsel in court funding disputes. Section 3722 does not specifically refer to legal services, but uses the phrase "goods and services." Erie County concludes that legal services were not contemplated by the statute based on this phraseology.

We are unpersuaded by Erie County's argument that "goods and services" may not be interpreted so as to include legal services. To the extent that the courts referred to in the statute would require the use of legal services in the usual course of conducting the business of the courts, we find that Section 3722 requires the counties to furnish such services to the courts. We do not conclude, however, that Section 3722 was intended to impose an obligation upon the counties to pay for legal fees incurred during litigation of the extraordinary nature of this case.

"[T]he dividing line between and the boundaries and powers of the three separate co-equal branches of our Government ... are sometimes indistinct and are probably incapable of any precise or exact definition." *Stander v. Kelley*, 433 Pa. 406, 422, 250 A.2d 474, 482 (1969). Those inexact boundaries lend themselves to conflicts as culminated in the *Antolik* litigation. It was not contemplated, however, that such con-

flicts would become routine. It would be disturbing indeed if in drafting the statute, the Legislature foresaw continual or incessant interference with the judiciary so as to necessitate permanent funding of legal services for its defense.

In *Commonwealth v. Mathues,* 210 Pa. 372, 406, 59 A. 961 (1904), we stated that

> ... the presumption always is that public officers will perform a public trust, not that they will default therein or abuse the trust, and we prefer to believe that the legislature have performed, and will continue to perform, their trust, rather than to stand in any fear of a wrong being attempted at some time in the future by one branch of the government against another, even if the power to commit such a wrong be admitted to exist, which we thoroughly believe is not so.

The experience of the past ninety years confirms this observation. We are confident that the Legislature did not perceive that cooperation between the branches has so deteriorated that the judiciary requires the ongoing vigilance of an established legal staff to defend against encroachments upon its power by our sister branches of government. For this reason, we cannot reasonably interpret Section 3722 to encompass legal services for litigation which becomes necessary to prevent encroachment on an essential judicial function by a different branch of government.

In the absence of statutory authority to compel payment of attorney's fees, we must examine whether an exception to the general rule regarding attorney's fees is warranted under the circumstances of this case. Limited exceptions to the general rule have been recognized when overriding considerations of justice compel such a result. *Bata v. Central–Penn National Bank of Philadelphia,* 448 Pa. 355, 379, n. 29, 293 A.2d 343, 356 n. 29 (1972), citing *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967).

Erie County contends that this Court's decisions in *Lavelle v. Koch,* 532 Pa. 631, 617 A.2d 319 (1992) and *Snyder v. Snyder,* 533 Pa. 203, 620 A.2d 1133 (1993) are dispositive of

this case. Unlike this case, neither *Lavelle* nor *Snyder* involved a successful challenge by the judiciary to actions by another branch of government that interfered with the inherent authority of the judiciary. We find that those cases are significantly distinguishable from this case and do not foreclose further consideration.

In *Lavelle*, the President Judge of the Carbon County Court of Common Pleas brought a mandamus action to compel the Carbon County Salary Board to appropriate and disburse funds for the 1989 fiscal year. Attorney's fees and costs associated with the litigation were also sought. On April 18, 1989, we accepted plenary jurisdiction and ordered the appropriation of reasonable and necessary funding for the judicial system. A contempt petition was filed when the order was not obeyed. We then appointed a master to dispose of the matter, who later issued a report recommending that the complaint be dismissed. Exceptions were filed by both parties. After consideration of the master's report and the exceptions, we dismissed the complaint and denied the request for attorney's fees and costs.

The master's report indicated that after negotiations between President Judge Lavelle and the Salary Board, all of the personnel positions requested by the court were approved by the Salary Board. The master found, however, that the amount appropriated to fund the authorized positions was $22,716.00 less than the $587,940.00 originally requested. President Judge Lavelle requested this Court to exercise its inherent power to compel payment of the difference.

We reiterated the longstanding principle that "the judiciary possesses the inherent authority to compel expenditures necessary to prevent the impairment of its exercise of the judicial power or of the proper administration of justice". *Lavelle*, 532 Pa. at 635, 617 A.2d at 321 (Citations omitted.) We cautioned, however, that our inherent authority is reserved for exceptional cases where there is a genuine threat to the administration of justice. "[T]he exercise of that power is justified only under certain conditions so as not to offend the doctrine of separation of powers." *Id.* at 635, 617 A.2d at 321.

We held that it is this Court's responsibility to determine the reasonable necessity of any funding request, while the plaintiff court has the burden of proving that its funding requests are reasonably necessary. We concluded that President Judge Lavelle had failed to establish that his funding requests were reasonably necessary. We also denied his request for attorney's fees and costs, stating

> There is no statute authorizing an award of attorney fees in a case like this. Nor is there any established exception permitting the practice. Moreover, we are unpersuaded by President Judge Lavelle's pleas that we create an exception now. Specifically, he argues that the judiciary's inherent powers to compel funding are meaningless unless the legislative branch is obligated to cover the costs associated with bringing an action in mandamus. However, that argument ignores the fact that any member of this Commonwealth's judiciary can turn to the Administrative Office of Pennsylvania Courts for "legal services and, when appropriate, representation by legal counsel." Pa.R.J.A. No. 505(15).

*Id.* at 638, 617 A.2d at 323.

In *Snyder,* a similar complaint in mandamus was brought by President Judge Snyder of the Jefferson County Court of Common Pleas to compel Jefferson County to provide funds reasonably necessary to administer the judicial system for the 1989 fiscal year. Attorney's fees and costs were demanded. We granted his petition to exercise plenary jurisdiction and appointed a master to hear the case. The master filed a report recommending that the complaint be dismissed and deferred the issue of counsel fees until the conclusion of the case.

The crux of the complaint was that the Jefferson County Salary Board denied the President Judge's request for a budget that included a five percent increase for the salaries of all court employees. The Salary Board denied the request and instead fixed salaries for all county employees, including court personnel, at the previous year's levels. The requested salary increases were based upon a recommendation made after a 1988 study conducted by the Pennsylvania Economy

League.   The study indicated that the salaries for Jefferson County employees were lower than those offered by ten employers who had responded to its survey.

The master concluded that the surveys and salary scales could be used to determine the reasonableness of salary requests, but that the information had to be considered in conjunction with evidence of judiciary's operations.   Without evidence of the court's past, present and projected case load and disposition rate, which was deemed to be critical, the master denied the request on the basis that the President Judge had not met his burden of proof.   We determined that the evidence was insufficient to establish that the common pleas court's ability to attract and retain qualified employees was impaired by the level of funding approved by the county. The complaint was dismissed.

The President Judge had requested an award of attorney's fees and costs, asserting that the costs associated with bringing the lawsuit were themselves reasonably necessary for the proper functioning of the court.   We rejected this argument as one substantively identical to that made in *Lavelle,* in which we commented on the availability of the AOPC for legal services and representation by legal counsel in appropriate instances.   We observed, however, that the AOPC is not required to provide legal representation to the common pleas courts even when critical issues involving the separation of powers doctrine are involved.

> Of course, the AOPC is under no obligation to represent every court in every funding dispute that may arise.   Nor is it under any obligation to pay someone else to do so.   As the Pennsylvania Rules of Judicial Administration make clear, the AOPC has discretion to determine whether in its judgment, a matter is "appropriate" for it to handle or to which it should devote its resources.

*Id.,* 533 Pa. at 213, n. 8, 620 A.2d at 1138, n. 8.   We denied the request for attorney's fees and costs based on the general rule that a litigant cannot recover counsel fees from an adverse party, observing that "the Plaintiff offers no persuasive reason to create a new exception today."

This leads us to the point where we must decide whether reason exists to recognize an exception to the general rule governing the award of attorney's fees under the limited circumstances presented in this case. "A basic precept of our form of government is that the executive, the legislature and the judiciary are independent, co-equal branches of government." *Beckert v. Warren*, 497 Pa. 137, 144, 439 A.2d 638, 642 (1981) (Citations omitted.) Implicit in the separation of powers doctrine is the concept of the inherent power of the judiciary.

> The allocation of [the] governmental powers to three distinct branches averts the danger inherent in the concentration of absolute power in a single body:

> The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny.

> The Federalist No. 47 (J. Madison). However, the separation of powers would not achieve this prophylactic effect unless it also prevented one branch from usurping the powers committed to the other branches of government. The crucial function of the separation of powers principle, therefore is not separation *per se*, but the "checking" power each branch has over the others.

*Id.,* 497 Pa. at 145, 439 A.2d at 642.

"The very genius of our tripartite Government is based upon the proper exercise of their respective powers together with harmonious cooperation between [sic] the three independent Branches." *Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 53, 274 A.2d 193, 197 (1971) (Citation omitted.) (plurality opinion), *cert. den.*, 402 U.S. 974, 91 S.Ct. 1665, 29 L.Ed.2d 138 (1971). When the anticipated cooperation falters, however, "the Judiciary must exercise its inherent power to preserve the efficient and expeditious administration of Justice and protect it from being impaired or destroyed." *Id.,* 442 Pa. at 53, 274 A.2d at 197.

■ We are persuaded that the constitutional scheme of separation of powers, which preserves the independence of the judiciary, warrants recognition of a limited exception to the general rule and therefore hold that attorney's fees may be awarded in a successful action challenging conduct which genuinely threatens or interferes with the inherent authority of the judiciary.

As we have observed, such conduct is uncommon. Nevertheless, the judiciary should never be intimidated nor forced to deplete financial resources which are dedicated to its intended functions in order to defend its constitutional role in the government of this Commonwealth. Nor should the judiciary be required to seek additional funding for its defense. Imposition of attorney's fees upon the offending party will not be unduly burdensome and will promote the public's interest in securing an independent judiciary.

■ An award of attorney's fees shall be limited to the reasonable and necessary legal services rendered to the judiciary; interest assessed on outstanding bills for legal services and attorney's fees generated to obtain payment of bills for legal services may not be included in an award of attorney's fees. In this case, Erie County challenged the reasonableness and necessity of the law firm's bills for the legal services rendered to the common pleas court. This matter must be resolved by the trial court. We therefore reverse the order of the Commonwealth Court and remand the matter to the common pleas court for further proceedings consistent with this opinion.

PAPADAKOS, J., did not participate in the decision of this case.

MONTEMURO, J., is sitting by designation.