Perkins v. TSG Inc.

*Norman A. Klinger,* for appellees.
*Gerard St. John,* for appellants.

CARPENTER, *J.,* November 30 1995—

## FACTS AND PROCEDURAL HISTORY

The appellants appeal an order entered by this court on September 14, 1995. The order followed an evidentiary hearing at which time we determined that Kenneth Ross, Esquire, pursuant to 42 Pa.C.S. §2503, would be responsible for paying the taxable costs including the appellants' reasonable attorney fees in the amount of $10,747.

The initial dispute arose after Jeffery and Sandra Perkins, appellees, had purchased 80 rolls of wallpaper manufactured by Combeau Industries, a wholly owned subsidiary of TSG Inc., appellants. The appellees purchased the wallpaper from Accent Wall coverings, an independent dealer, in Rockville, Maryland. Several years after installation the appellees noticed a fading and discoloration of the wallpaper. The wallpaper had a warranty issued by the appellants, so the appellees retained a local attorney to seek coverage under the warranty for their losses. The appellees' attorney, Jordan

M. Spivok, wrote to the appellants in Pennsylvania,[1] and informed them of the claim. In response, the appellants' attorney, Barry Speigel, replied that his clients denied liability, but as a courtesy would agree to meet with the appellees the next time they traveled to the Maryland area. Over the next four months the appellants had taken no further action so the appellees initiated a lawsuit in the District Court of Montgomery County, Maryland.

At this point the appellees attempted to serve the appellants twice by certified mail, using the address listed on the warranty card. Both times, however, they sent the complaint to same address, and both times the return receipt came back without being signed.[2] The appellees then attempted to serve the appellants, pursuant to Maryland Rules of Civil Procedure Rule 3-124(c), by serving the complaint on the Maryland Department of Assessments and Taxation.

Subsequently, a hearing was held in the Maryland District Court, in September of 1986. The appellants failed to appear. At the hearing the court took testimony from the appellees, then entered judgment in their favor in the amount of $3,760 plus costs. Almost immediately, but after the time had run for the Maryland court to reconsider its decision, the appellees' attorney wrote to the appellants' attorney informing him inter alia of the default judgment.[3]

---

1. The attorney's letter was addressed to Paul R. Kent, who was at that time the vice-president of TSG Inc., located at 1400 Welsh Road, North Wales, PA.

2. The appellants had moved their office to the North Wales address two years prior to the time that the appellees' attorney attempted to serve them.

3. The letter also offered to settle the matter for the sum of $3,000 and informed the appellees' attorney that if the settlement offer was rejected, the judgment would be entered in Pennsylvania. (Defendant's petition to strike judgment.)

Thereafter on April 6, 1987, the appellees filed a praecipe in Pennsylvania, to enforce the Maryland default judgment. The appellants opposed this and in response filed a motion to strike the judgment. The parties presented their positions[4] at an oral argument before the Honorable Paul W. Tressler, on December 23, 1987. Following the argument the court denied the appellants' motion but granted the appellees'. The appellants then appealed the decision to the Pennsylvania Superior Court, and in an opinion reported at *Perkins v. TSG Inc.,* 390 Pa. Super. 303, 568 A.2d 665 (1990), the Superior Court reversed the order, struck the judgment, and remanded the case back to the common pleas court.[5]

With the case back before the Honorable Paul W. Tressler, the appellants filed a petition for taxable costs, including attorneys fees and the appellees filed a petition for leave to join an additional defendant, Kenneth D. Ross. The court entered an order that denied the appellees' petition, but granted the appellants' and directed an evidentiary hearing be held to determine the reasonableness of the fees.

In accordance with the Honorable Paul W. Tressler's order, an evidentiary hearing was held before this court on September 14, 1995, to determine reasonable attorney fees. This court heard testimony from various witnesses including, the appellee, Sandra Perkins. At no time however, did the appellants offer any proof that the appellees had knowledge of or involvement with the egregious

---

4. The main thrust of the appellants' argument was that the ex parte default judgment should be stricken, based on the fact the appellees' good faith attempt to serve the appellants was in fact a sham and purposely designed to garner the default judgment.

5. Following the decision by the Superior Court, the appellees subsequently learned that their Pennsylvania attorney, Kenneth D. Ross, had not filed a brief or attended oral argument.

conduct of their attorneys, that had been the focal point of the Superior Court's decision.[6]

At the conclusion of the hearing, this court determined that the appellants proved reasonable attorney fees in the amount of $10,747. Further we found that Kenneth D. Ross, Esquire, the appellees' Pennsylvania counsel, had allowed the Maryland action to continue and therefore was an active participant, contrary to the role played by the appellees. As a result we ordered Kenneth D. Ross, Esquire to pay the assessed fees.

## ISSUE

I. *Whether This Court Properly Assessed the Reasonable Attorney Fees Against Kenneth D. Ross and Not the Appellees?*

## DISCUSSION

I. *This Court Properly Assessed the Reasonable Attorney Fees Against Kenneth D. Ross and Not the Appellees*

The appellants in their statement of matters complained of on appeal, asserted that this court erred by assessing reasonable attorney fees on Kenneth D. Ross. To support their contention they argue that the order entered by the Honorable Paul W. Tressler, on April 10, 1991, has a binding effect on this court, and therefore mandates that the appellees should be the ones responsible for the fees. While this court concedes that an order entered by a court with coordinate jurisdiction

---

6. The Superior Court stated that, "Upon review of the facts, we find that the actions of appellees' counsel amounted to constructive fraud, if not actual fraud, . . ." *Perkins, supra* at 304, 568 A.2d at 665.

would have a binding effect on it, nevertheless, when viewed in conjunction with the facts of this dispute the position that the appellees are the only ones who could be assessed costs, becomes untenable.

It is a general rule in the Commonwealth that, "a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception." *Snyder v. Snyder,* 533 Pa. 203,212, 620 A.2d 1133,1139 (1993). In the instant dispute such statutory authorization is found.

The Pennsylvania Judicial Code provides that it is in the court's discretion to award taxable costs.[7] It further refers to 42 Pa.C.S. §2503, when dealing with the issue of attorney fees. 42 Pa.C.S. §2503, states:

"The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter: . . .

"(7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of the matter. . . .

"(9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith."

Finally, 42 Pa.C.S. §102 defines "participant" as litigants, witnesses and their counsel. When these three statutes are applied to the instant dispute the statutory

---

7. 42 Pa.C.S. §1762, states that "the governing authority shall prescribe by general rule the standard governing the imposition and taxation of costs, . . . including . . . the amount and responsibility for costs in specific matters."

authority clearly exists for an award of taxable costs in the form of attorney fees against Ross.

The next step in our analysis is the order that the Honorable Paul W. Tressler entered. The order states, "upon consideration of defendant's petition for taxable costs, including attorney fees, plaintiffs' response thereto, and after argument before the undersigned, it is hereby ordered and decreed that defendants' petition is granted. The court administrator is directed to schedule an evidentiary hearing forthwith, said hearing to determine the reasonableness of counsel fees." (Order of the Honorable Paul W. Tressler, April 10, 1991.)

While the order granted attorney fees, it did not specifically address who the fees were to be assessed against. Additionally, it is significant that the order set up a full evidentiary hearing that would be held later so that the parties could present evidence as to the reasonableness of the fees. At this hearing Sandra Perkins testified on direct examination regarding the extent of her involvement with Ross' actions.

"Q. What's the next thing that you became aware relating to any action in Pennsylvania, and where did that idea come from?

"A. Our attorney recommended to have an attorney in Pennsylvania.

"Q. Who retained that attorney?

"A. Mr. Spivok. . . .

"Q. Did you become aware of what Mr. Ross did regarding this case in Pennsylvania?

"A. Yes.

"Q. How did you become aware of that?

"A. He sent us a letter saying that he was attempting to get a judgment in Pennsylvania. . . .

"Q. Did you, at any time, tell your attorneys, you or your husband, how to go about what they were doing?

"A. No, sir.

"Q. Did they ever ask you for your approval of whatever techniques or methods they were using?

"A. No. . . .

"Q. Between the date in June and January 16, 1990, did you have any communication with Mr. Ross?

"A. Several phone calls.

"Q. By whom?

"A. Initiated by me to Mr. Ross.

"Q. For what purpose?

"A. To find out what was happening? . . .

"Q. During that time or any other time up to January 1990, did anyone, including the two attorneys . . . , tell you that there was an appeal pending from Judge Tressler's order?

"A. Not at any time.

"Q. How and in what fashion did you find out anything about the appeal?

"A. We received a letter. . . .

"Q. What was your reaction when you received R-1? (letter was marked for hearing)

"A. We were shocked. It was unbelievable. We had absolutely no idea that there had been an appeal or another trial or anything. We knew nothing of anything." (N.T. 9-14-95, pp. 117-24.)

After listening to the credible testimony of Perkins, this court found that the appellants did not offer any proof that the appellees had any involvement with the activities of their Pennsylvania counsel. In fact the appellees testified on cross-examination, that they were not sure to what extent Ross still represented them.

"Q. Was he [Ross] still representing you in 1991?

"A. I'm not sure of the date that he no longer was representing us. It was between 1991—at some point in 1991 was when we found out that the Superior Court had reversed the decision. So at that point he was still representing us; we thought he was.

"Q. This was a year after the Superior Court?

"A. He had sent us no correspondence during that year." (N.T. 9-14-95, pp. 128-29.)

Therefore this court made the determination that the appellees were not aware of the actions of their Pennsylvania attorney, who was hired solely upon advice of their Maryland attorney and for the singular purpose of entering the Maryland judgment in Pennsylvania. Accordingly we made the determination that it would not be just to assess taxable costs including attorney fees against the appellees. Alternatively, we decided that it would be appropriate to make Ross responsible for the fees.

In conclusion we determined that Ross, while not a party, was in fact a "participant" under the definition of the statute. As a result, it was not an abuse of discretion for this court to make him responsible for paying the attorney fees. Secondly, while the Honorable Paul W. Tressler's order would have a binding effect on us, a careful reading of the order reveals that it did not specify who the fees were to be assessed against, and further, after holding a full evidentiary hearing on the matter this court would have been in the best position to fairly weigh the equities of assessing the fees.

## CONCLUSION

Based on the foregoing analysis this court's order of September 14, 1995, directing Kenneth D. Ross to pay the reasonable attorney fees in the amount of $10,747, should be *affirmed.*